**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| In re:<br><br>ADAK FISHERIES, LLC, an Alaska limited liability company,<br><br>Debtor. | Case No. A09-00623-DMD<br>Chapter 7<br><br>**Filed On**<br>**5/12/10** |

## MEMORANDUM ON PROPOSED SEOIL SETTLEMENT

Debtor Adak Fisheries, LLC ("Adak") and the chapter 7 trustee seek approval of a settlement with SeOil Agency USA ("SeOil"), an entity that did business with the debtor in 2008. Adak Seafood, LLC, who purchased most of the debtor's assets while this case was pending under chapter 11, objects to the proposed settlement. I conclude that the escrowed funds which are the subject of the settlement were not included in the sale to Adak Seafood. I further find that the settlement is appropriate under the circumstances. Adak Seafood's objection will be overruled and the motion to approve settlement will be granted.

The debtor was a seafood processor located on Adak Island in the Aleutians. On December 26, 2007, SeOil, on behalf of Alkor Shipping, entered a freight contract with the debtor to transport processed fish from the port of Adak to ports in Japan, Korea and other locations.[1] A minimum of 6,000 tons of fish was to be delivered to the port of Adak for transport under the contract. The fish was to be loaded for shipping beginning on January 20, 2008. The deal did not go smoothly. Alkor Shipping claimed that the debtor was

---

[1] *See* Ex. A to Arbitration Demand, attached to Proof of Claim No. 50, filed by SeOil on Nov. 16, 2009. A copy of this proof of claim was introduced into evidence at the hearing as Adak Seafood's Ex. 5.

constantly changing loading dates and was unable to provide fish in the quantities that had been represented.

Adak eventually shipped only 2,400 metric tons with Alkor, far less than projected.[2] Alkor was not paid for its services. When it seized about $195,000.00 in fish sale proceeds in Korea, Adak responded by suing SeOil in federal district court in Anchorage. In lieu of continued litigation, SeOil and Adak agreed to establish an escrow account and select an arbitrator to resolve their disputes. They executed an escrow agreement on May 14, 2008.[3] The escrow was to be funded with the seized fish sale proceeds of $195,000.00 and $100,000.00 from the debtor. Section 1.3 of the escrow agreement provided that, once the funds were deposited, they could only be disbursed by the escrow agent pursuant to the written direction of the arbitrator or the joint written direction of the parties.[4] Section 1.5 of the escrow agreement provided that it would terminate "one year from the date of this Escrow Agreement" if the escrowed funds had not been disbursed earlier.[5] If the agreement were terminated in this manner, the escrow agent was to disburse the funds to Adak.[6]

Wells Fargo Bank was the escrow agent. The fish sale proceeds were placed in escrow with the bank, but the debtor did not contribute $100,000.00 as specified under the

---

[2] SeOil's Proof of Claim No. 50, Arbitration Demand at 4.

[3] Trustee's Ex. 3.

[4] *Id.* at 2, § 1.3.

[5] *Id.* at 3, § 1.5.

[6] *Id.*

2

escrow agreement. Frank Pfiffner was subsequently appointed as arbitrator, although no arbitration ever took place. One year after the escrow agreement had been entered, the debtor requested that the escrowed funds be released to it under the termination provision found in Section 1.5 of the escrow agreement. The arbitrator found that the termination language was superceded by other provisions in the agreement, including Section 1.3 and Recital B, which specified that the funds would be escrowed until the parties had resolved their dispute.[7] He denied the debtor's motion to release the escrowed funds on August 19, 2009.[8]

Adak filed for chapter 11 relief on September 11, 2009.[9] The filing stayed any further proceedings regarding the arbitration.[10] The escrowed funds and the SeOil litigation were both disclosed in Adak's schedules. The Wells Fargo escrow was listed on the debtor's Schedule B - Personal Property, under Item 2 (checking, savings or other financial accounts).[11] It was described as an "[e]scrow of funds at issue in court case Adak v. SeOil," with a value of $195,417.00.[12] The debtor also listed the pending litigation against SeOil as an asset, under Item 18 (other liquidated debts owed debtor) of Schedule B. The litigation was described as "Adak Fisheries, LLC v. Seoil Agency Co., USA (value unknown)" and

---

[7] Trustee's Ex. 2.

[8] *Id.*

[9] *See* Ch. 11 Voluntary Petition, filed Sept. 11, 2009 (Docket No. 1).

[10] 11 U.S.C. § 362(a)(1).

[11] Summary of Schedules and Schedules A - J, filed Oct. 1. 2009 (Docket No. 72), at 3.

[12] *Id.*

3

given a value of $1.00.[13] SeOil's claim against the debtor was listed on Schedule F as an unsecured, nonpriority claim for $1.00.[14]

Adak also listed the SeOil litigation in response to Item 4 (suits and administrative proceedings), on its Statement of Financial Affairs.[15] The litigation was listed as both an asset and a liability, and was described as follows:

> *Adak Fisheries, LLC v. Seoil Agency Co., USA, Inc. et al*
> No. 3:08-00098 TMB, US District Court, District of Alaska
> Claim for Damages; arbitration set for 11/17/09
> Harris SEA for Seoil; Brewster for Adak.[16]

The Wells Fargo escrow account and the related SeOil litigation were accurately and fully disclosed on the debtor's schedules and statements. Adak also included the escrow on balance sheets it submitted with some of its monthly financial reports to the United States Trustee. The balance sheets for the periods ending June 30, 2009 and December 31, 2009 both listed the sum of $195,417 as an asset under the heading "Restricted Cash."[17]

---

[13] *Id.* at 5.

[14] Schedules A - J (Docket No. 72), at 38.

[15] Statement of Fin. Affairs, filed Oct. 1, 2009 (Docket No. 71).

[16] *Id.*, Ex. 4 at 1.

[17] Adak Seafood's Ex. 2 (balance sheet for period ending Jun. 30, 2009), Ex. 4 (balance sheet - draft, for period ending Dec. 31, 2009).

4

Adak filed a motion to sell its plant, with associated equipment and assets, free and clear of liens on October 9, 2009.[18] The motion proposed selling these assets to Adak Seafood for the sum of $488,000.00 cash plus assumption of approximately $6.7 million in debt owed to Independence Bank. Attached to the motion as Exhibit A was a proposed asset purchase agreement. This draft agreement included "the cash balances (and cash equivalents) of the Seller" within the assets being sold to Adak Seafood.[19] The agreement excluded certain assets from the sale, including: "all Claims (excluding Claims relating to existing violations of any rights with respect to Owned Intellectual Property) and rights of action and all causes in action arising out of occurrences before or after the consummation of the proposed transactions contemplated herein."[20] The term "claim" was broadly defined under the agreement to encompass any dispute, including an arbitration.[21]

The debtor's motion for sale and a number of related motions were brought before the court for hearing on November 9, 2009. The hearing was continued over to November 10, 2009. On November 10, 2009, the hearing was continued from about 11:00 a.m. to 2:06 p.m. and then again to 4:37 p.m.[22] During the intervals between the continued hearings on November 10, the parties negotiated modifications to the proposed

---

[18] Debtor's Applic. to Sell Adak Plant Free and Clear of Liens, filed Oct. 9, 2009 (Docket No. 104).

[19] *Id.*, Ex. A at 4.

[20] *Id.*, Ex. A at 5.

[21] *Id.*, Ex. A at 1.

[22] Proceeding Mem. filed Nov. 9, 2009 (Docket No. 150).

5

sale. John McDowall, attorney for the purchaser, was present in Anchorage for the hearings. Also present were Arnold Willig and Christopher Mulhearn, representing Independence Bank.

Cabot Christianson, Adak's attorney, outlined the terms of sale at the 2:06 p.m. hearing. He said:

> So with that sort of general introduction - - and in terms of what's left, I mean, someone might say what's left in the bankruptcy estate . . . after the sale? The answer is not much. Everything is being sold. There are some escrows which I'll describe which are - - some cash deposits, I mean, with the State of Alaska and elsewhere which are being retained by the estate. There are, I guess, some avoidance actions which are excepted from the sale. Every other thing is going to the buyer, including the Eskimo Princess, which is titled in another entity and the title to that vessel will transfer to the buyer.[23]

Later during this hearing, Christianson clarified that no cash deposits were being transferred to the purchaser other than cash in accounts with Independence Bank. He said:

> The sale does not include cash deposits except such cash as may be held in closing in accounts controlled by Independence Bank. There are a few accounts, deposits that are referenced in the schedules. I think there's around $110,000 posted for the State of Alaska for fish obligations and taxes and perhaps other state obligations. There's the retainer in my trust account, there's a deposit with the Bankston & McCollum law firm and - - or, Bankston,

---

[23] Transcript of Proceedings held Nov. 10, 2009 (Docket No. 152), 10:23 - 11:4.

> whatever his firm is called these days. The
> Bankston firm. And those are not part of the sale.
> The only sale - - and there's the DIP account. The
> only sale - - the only cash that's being sold is the
> cash that is in the bank accounts controlled by the
> bank.[24]

Although given the opportunity, McDowall did not address or correct Christianson's comments regarding the accounts being included in the sale.

A stipulated order was signed by this court on November 10, 2009, following the hearing. Due to technical problems with the court's electronic case filing system, the order was not docketed until November 12, 2009.[25] McDowall was served with the order. The order approved the sale to Adak Seafood on the terms set forth in the asset purchase agreement which was attached as Exhibit A, but "subject to the provisions of this order."[26] Paragraph 9 of the order provided that the sale "does not include cash deposits, except such cash as may be held at Closing in accounts controlled by Independence Bank."[27]

Like the earlier draft agreement submitted with the motion to sell, the asset purchase agreement attached to the sale order stated that "cash balances (and cash equivalents) of the Seller" were included within the assets being sold to Adak Seafood.[28] The

---

[24] *Id.* at 13:14-25.

[25] Order Granting Debtor's Applic. to Sell Adak Plant Free and Clear of Liens, entered Nov. 12, 2009 (Docket No. 149).

[26] *Id.* at 2.

[27] *Id.* at 3.

[28] Order Granting Applic. to Sell (Docket No. 149), Ex. A at 4.

7

agreement attached to the sale order again excluded all claims, except those relating to Owned Intellectual Property, from the sale.[29] As before, a claim was broadly defined to include any dispute, including an arbitration.[30]

After the sale order was entered, a dispute arose regarding the form of the asset purchase agreement ["APA"]. McDowall e-mailed a modified version of the APA to Christianson, but the debtor refused to sign it. Christianson e-mailed McDowall on November 25, 2009, advising that Adak was willing to deliver certain other documents, including "the Bill of Sale and General Conveyance, the Assignment of Agreements, and the Manager's Certificate in the form most recently prepared by [McDowall]."[31] Christianson noted, however, that because the sale order had made "several significant changes" to the APA, and in order to avoid any confusion, his client was not willing to sign the modified APA McDowall had sent.[32]

Adak's president, John Young, executed the bill of sale, the assignment of leases and the manager's certificate which McDowall had prepared. The bill of sale conveyed "the cash balances and cash equivalents in bank accounts held, as of the date

---

[29] *Id.* at 5.

[30] *Id.* at 1.

[31] McDowall Decl. in Supp. of Adak Seafood's Opp'n to Application to Settle, filed Feb. 22, 2010 (Docket No. 192), Ex. 3 at 2.

[32] *Id.* Christianson's e-mail erroneously refers to the sale order as "Docket No. 141," but it is clear from the context of the message that he is referring to the order at Docket No. 149, with the attached APA, rather than Docket No. 141, which is a motion to compel payment of administrative rent.

hereof, in accounts at Independence Bank," and excluded from the sale all claims, including "*Adak Fisheries v. Seoil Agency Co., USA, et al,* Case NO.3:08-00989 in the United States District Court for the District of Alaska."[33] McDowall proceeded with the closing and wired funds to complete the sale on Wednesday, November 25, 2009.[34] He indicated that he would "address the refusal of the Seller to sign the APA on Monday."[35] Adak's president didn't sign the asset purchase agreement that following Monday, or on any other day thereafter. Adak Seafood eventually sued the debtor over its failure to sign the APA.[36]

Adak filed its motion to approve the compromise with SeOil on January 1, 2010.[37] The motion proposed splitting the funds in the Wells Fargo escrow account, $193,417, equally between Adak and SeOil. The parties would mutually release their claims, Adak's suit against SeOil would be dismissed, and SeOil would withdraw the proof of claim it filed in this case. Each party would be responsible for one-half of the arbitrator's fees and costs, and the stay would be lifted to permit payment of the debtor's share of this obligation.

This case was converted to one under chapter 7 on February 23, 2010. The chapter 7 trustee, Kenneth Battley, filed a memorandum in support of the proposed

---

[33] Debtor's Suppl. Mem. in Supp. of Mot. to Approve Compromise of SeOil Litig., filed Feb. 22, 2010 (Docket No. 193), Ex. D at 2-3.

[34] McDowall Decl. (Docket No. 192), Ex. 2 at 1.

[35] *Id.*

[36] *See* Complaint filed Feb. 2, 2010 (Docket No. 1), in *Adak Seafood, LLC v. Adak Fisheries, LLC*, Adv. No. 10-90005.

[37] Docket No. 180.

9

settlement on April 12, 2010.[38] The only objection to the proposed settlement was filed by Adak Seafood. Adak Seafood contends the debtor cannot enter into this settlement agreement because the escrow account was clearly conveyed to it through the earlier sale. I respectfully disagree.

The debtor's claims against SeOil were clearly and accurately listed on its schedules and statements. When the debtor filed its motion to sell the Adak plant, the attached asset purchase agreement excluded all claims, including arbitration claims, from the proposed sale to Adak Seafood. At the continued hearing on the proposed sale, held November 10, 2009, Adak's attorney stated on the record that the only cash that was being sold was cash in bank accounts controlled by Independence Bank. The order approving the sale was consistent with this representation; only cash "as may be held at Closing in accounts controlled by Independence Bank" was included in the sale.[39] Further, the APA attached to this order excluded the debtor's arbitration claims from the sale. These provisions make it clear that the funds escrowed at Wells Fargo, as well as Adak's claims against SeOil, were not part of the sale to Adak Seafood. If Adak Seafood felt otherwise, McDowall should have stated his objections during the hearings held on November 10, 2009. He had the opportunity to do so, but said nothing. His belated objections are not well taken.

---

[38] Docket No. 216.

[39] Order Approving Sale (Docket No. 194), at 3.

Even assuming the debtor *had* executed an APA in the form as attached to the order approving sale, my conclusion would be the same. The terms of sale, as stated in the APA, were approved, but *subject* to the provisions of the order. Accordingly, the more general provision in the APA, which stated that the debtor's cash balances and cash equivalents were being sold, was modified by the more specific provision in the order itself, which included only "such cash as may be held at Closing in accounts controlled by Independence Bank" as part of the sale.[40] Neither the Wells Fargo escrow nor the debtor's claim against SeOil were included in the sale to Adak Seafood.

Adak Seafood raises an estoppel argument, claiming that the debtor's counsel said the sale would be a conveyance of all of the debtor's assets. Christianson's statement is taken out of context. He said everything was being sold, except for some escrows and cash deposits which were being retained by the estate. He also specifically indicated that the only cash being sold was cash in bank accounts controlled by Independence Bank. There is no basis for a claim of estoppel given such flimsy proof.

Adak Seafood also argues that the debtor cannot compromise the SeOil claim because SeOil is simply an unsecured creditor. I disagree. Both SeOil and the debtor had rights in the escrow account at the time this bankruptcy case was initiated. The arbitrator had determined, pre-petition, that the escrow did not automatically terminate after one year, and would not terminate until the respective disputes of these two parties had been resolved.

---

[40] Order Approving Sale (Docket No. 149), at 3.

"Whatever rights a debtor has in property at the commencement of the case continue in bankruptcy – no more, no less."[41] When this case converted to one under chapter 7, the trustee acquired only the rights that the debtor had in the escrow account under 11 U.S.C. § 541(a)(1).[42] The debtor could not compel a unilateral termination of the escrow account before this bankruptcy was filed, and the trustee cannot do so now. Absent settlement, the trustee would have to proceed with the arbitration to establish his right to any of the escrow proceeds. The cases cited by Adak Seafood do not compel a different result. None of them involved an escrow where funds could only be disbursed pursuant to the direction of an arbitrator.[43] Considering the issues SeOil has raised about debtor's performance under the freight agreement and the costs which would be incurred for a highly contested arbitration, I feel that the debtor, and now the trustee, have made a reasonable business decision in opting instead to settle under the terms proposed here.

---

[41] *Moody v. Amoco Oil Co.,* 734 F.2d 1200, 1213 (7th Cir. 1984); *see also Frazer v. Drummond (In re Frazer)*, 377 B.R. 621, 626 (B.A.P. 9th Cir. 2007).

[42] *Moody v. Amoco*, 734 F.2d at 1213.

[43] Cases cited by Adak Seafood include the following: *Wilson v. United Sav. of Texas (In the Matter of Missionary Baptist Found. of Am. Inc.)*, 792 F.2d 502 (5th Cir. 1986) (Debtor entitled to recover replacement and repair, tax, and insurance escrows following sale of two nursing homes as lender liability terminated upon sale); *World Commc'ns, Inc. v. Direct Mktg. Guar. Trust (In re World Commc'ns, Inc.)*, 72 B.R. 498 (D. Utah 1987)(Escrow established by credit card payment receiving service to cover charge backs was property of the estate); *Fessenden v. Maine Sav. Bank, (In re Nield)*, 95 B.R. 259 (Bankr. D.Me. 1989)(Tax and insurance escrow was property of the estate and could not be used by bank to pay attorney's fees); *In re Leff*, 88 B.R. 105 (Bankr. N.D.Tex. 1988)(Prepetition retainer placed in attorney's trust account was property of the estate which couldn't be used to defend against dischargeability complaint); *Gassen v. Universal Bldg. Materials, Inc. (In the Matter of Berkley Multi-Units, Inc.)*, 69 B.R. 638 (Bankr. M.D.Fla. 1987)(Funds deposited in escrow for the purchase of an apartment building were property of the estate).

The motion to approve compromise of the SeOil litigation will be granted, with the modification stated on the record at the hearing. The trustee's counsel, Erik LeRoy, indicated that SeOil has agreed to give the bankruptcy estate 60% of the escrow proceeds in order to promptly put this matter to rest. An order will be entered consistent with this memorandum, approving the settlement for 60% of the outstanding escrow funds, or $117,250.20. The remaining terms of the settlement are unchanged.

DATED: May 12, 2010.

            BY THE COURT

            /s/ Donald MacDonald IV
            DONALD MacDONALD IV
            United States Bankruptcy Judge

Serve: C. Christianson, Esq.
    E. LeRoy, Esq.
    J. McDowall, Esq.
    K. Hill, Esq.
    U. S. Trustee

05/12/10