UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF ALASKA

In re:

ADAK FISHERIES, LLC,

           Debtor.

Case No. A09-00623-DMD
Chapter 7

Filed On
1/10/12

MEMORANDUM ON TRUSTEE'S OBJECTIONS TO
CITY OF ADAK'S CLAIMS NOS. 21 AND 114

      Kenneth Battley, the chapter 7 trustee, has filed objections to the City of Adak's Claims Nos. 21 and 114. Battley objects to Claim No. 21 on the grounds that it is a duplicate of Claim No. 114. This objection will be sustained.

      The trustee objects to the scope of lien asserted by the City in its Claim No. 114. I agree with the trustee that the City's lien does not encumber funds in the estate that were realized from the debtor's intangible personal property. The trustee's objection as to the scope of the lien in Claim No. 114 will be sustained. However, as to the unsecured balance of the claim, the portion that represents the principal amount of unpaid sales taxes will be allowed as a priority tax claim under 11 U.S.C. § 507(a)(8)(C), and the remainder will be allowed as a general unsecured claim.

Case Background

      Debtor Adak Fisheries was a shore-based fish processor located on Adak Island, a remote island in the Aleutian chain. The debtor owed sales taxes to the City of

Adak when it filed a chapter 11 petition on September 11, 2009. The City had recorded a Notice of Claim of City Tax Lien in the Aleutian Islands Recording District about five months before the debtor's bankruptcy petition was filed, on April 23, 2009. According to the City's notice, the debtor owed $546,191.50 for unpaid sales taxes for tax periods from April 30, 2006 to April 30, 2009, plus accrued interest and penalties. The notice stated, "This lien is asserted against all real and personal property of [Adak Fisheries LLC]."[1] Both of the City's claims are based on this tax liability.

While this case was pending under chapter 11, this court approved a sale of the debtor's plant facility on Adak Island, with its associated equipment and assets, for $488,000.00 cash.[2] The sale was free and clear of the claims, liens and interests of all entities other than the security interests of creditor Independence Bank. The liens attaching to the sale proceeds included those claimed by the City, the State of Alaska, the Internal Revenue Service, Pentech Leasing, and Muir Milach Management, LLC, which claimed a fishermen's lien in the proceeds.

After this case converted to a chapter 7 proceeding in February of 2010, Muir Milach filed an adversary proceeding against the City and the chapter 7 trustee to determine the priority of its lien in the sale proceeds. The court determined that Muir Milach's

---

[1] Claim No. 114-1, Part 3 at 2.

[2] Order Granting Debtor's Application to Sell Adak Plant Free and Clear of Liens, entered Nov. 12, 2009 (Docket No. 149).

fishermen's lien primed the City's tax lien.[3]  Muir Milach has now been paid $393,570.73 of the sale proceeds, leaving a balance of $62,319.77.  The trustee believes the City's tax lien encumbers these remaining funds by virtue of the notice of tax lien it recorded in the Aleutian Islands Recording District.

Post-conversion, this court also approved a settlement between the chapter 7 trustee and a Korean fish buyer regarding fish sale proceeds.  The fish sale proceeds were seized in Korea and then escrowed in Anchorage, prepetition, pending arbitration of a dispute between the debtor and the fish buyer regarding performance of a December 2007 freight contract.[4]  The settlement resulted in the estate receiving an additional $127,000.00.  The trustee has also recovered approximately $10,000.00 from insurance premium refunds.  He contends the City's lien does not encumber these assets, on the following grounds:  1) the definition of "property" in the City's ordinance does not encompass cash or intangible personal property;  2) the City did not perfect its lien against the debtor's personal property by recording a notice of lien in the Anchorage Recording District; and  3) because the City's lien against the debtor's intangibles was not perfected, it is ineffective as to the trustee, who holds the status of a judicial lien creditor under 11 U.S.C. § 544(a)(1).

---

[3] *See* Summ. J. Memorandum, filed Dec. 30, 2010 in *Muir Milach Management, LLC v. Battley*, Adv. No. A10-90018-DMD (Docket No. 27), *published at* 10 A.B.R. 23 (Bankr. D. Alaska 2010).

[4] *See* Mem. on Proposed Seoil Settlement, filed May 12, 2011 (Docket No. 221), *published at* 9 A.B.R. 385 (Bankr. D. Alaska 2010).

3

Analysis

The City is a second class city within an unorganized borough.[5] The Alaska Statutes authorize the City to levy and collect a sales tax in the manner provided for boroughs.[6] Boroughs "may levy and collect a sales tax on sales, rents, and on services provided in the borough."[7] Further, AS 29.45.650(e) authorizes a borough to impose a lien against both real and personal property to secure payment of sales taxes:

> A borough may provide for the creation, recording, and notice of a lien on real or personal property to secure the payment of a sales and use tax, and the interest, penalties, and administration costs in the event of delinquency. When recorded, the sales tax lien has priority over all other liens except (1) liens for property taxes and special assessments; (2) liens that were perfected before the recording of the sales tax lien for amounts actually advanced before the recording of the sales tax lien; (3) mechanics' and materialmen's liens for which claims of lien under AS 34.45.70 or notices of right to lien under AS 34.35.064 have been recorded before the recording of the sales tax lien. This subsection applies to home rule and general law municipalities.[8]

---

[5] *See* Alaska Community Database Community Information Summaries (CIS), found at: http://commerce.alaska.gov/dca/commdb/CIS.cfm (Dec. 21, 2011).

[6] AS 29.45.700.

[7] AS 29.45.650(a).

[8] AS 29.45.650(e).

4

The City enacted an ordinance that levies a sales tax on "all sales, rents, and services made in the city . . . at the rate of three percent of the selling price."[9] Penalties and interest accrue on any delinquent tax and are collected in the same manner.[10] The City's ordinances also provide that its sales taxes, interest and penalties "shall constitute a lien in favor of the City upon *all the property* of the person owing the tax," and that such lien "arises upon delinquency and continues until the liability is satisfied or the lien is foreclosed."[11] Per the Adak City sales tax ordinances, "property means any item, equipment, or other material subject to ownership."[12]

The trustee argues that the definition of "property" found in the City ordinance does not include cash or intangible personal property such as an insurance refund or escrow proceeds. The City disagrees. It relies on the language in its tax lien ordinance, which places a lien on "all the property" of the person owing the tax. The City lacks the power to decree a lien of this scope.

It is well established that tax liens arise only through specific legislative authorization.[13] The Alaska Legislature has recognized a need for uniformity in the

---

[9] ADAK, AK., ORDINANCE 4.06.05(A) (2009 Supp.). A complete copy of the Adak Sales Tax ordinances is appended to the trustee's Supplement to Obj. to Claim, filed Dec. 6, 2011 (Docket No. 273), Ex. A.

[10] ADAK, AK., ORDINANCE 4.06.45.

[11] ADAK, AK., ORDINANCE 4:06.60 (emphasis added).

[12] ADAK, AK., ORDINANCE 4:06.10.

[13] *Fairbanks North Star Borough v. Howard*, 608 P.2d 32, 33-34 (Alaska 1980).

assessment and collection of borough and city sales taxes.[14]  "Public policy would be thwarted if individual municipalities were enabled to set up a number of different systems of sales tax liens, and the determination of lien priorities would be unduly complicated."[15]

> A municipality's authority to pass ordinances is to be liberally construed. However, a municipality's powers are not unbounded. A municipality may only exercise those powers which are specifically enumerated in Title 29 of the Alaska Statutes, or those "necessarily or fairly implied in or incident to the purpose of all powers and functions conferred in this title."[16]

Title 29 of the Alaska Statutes applies to cities and boroughs as well as municipalities.  AS 29.45.060(e) "provides the exclusive procedure" for such entities to collect delinquent sales taxes pursuant to a tax lien.[17]  "Taxes are not a lien unless expressly made so by statute, and when expressly created, the lien is not to be enlarged by construction."[18]

What personal property may be encumbered by a city tax lien?  The general definition of "personal property," applicable "in the laws of the state, unless the context otherwise requires, . . . includes money, goods, chattels, things in action, and evidences of

---

[14] *City of Homer v. Gangl*, 650 P.2d 396, 401 (Alaska 1982).

[15] *Fairbanks North Star Borough*, 608 P.2d at 34.

[16] *Kenai Peninsula Borough v. Assoc. Grocers, Inc.*, 889 P.2d 604, 606 (Alaska 1995) (citations omitted).

[17] *Id.*

[18] *Libby, McNeill & Libby v. City of Yakutat*, 206 F.2d 612, 613-14 (9th Cir. 1953).

6

debt."[19] However, for the purposes of AS 29.45.650(e), "personal property" is defined as "tangible property other than real property, such as merchandise, stock in trade, machinery, equipment, furniture, fixtures, vehicles, boats, and aircraft."[20] The City's sales tax lien is limited by this narrower definition. It cannot, by ordinance, be expanded to encompass intangibles or money.[21]

The City's tax lien encumbers the $62,319.77 of proceeds remaining from the sale of the debtor's plant and related assets in Adak. Its lien encumbered the plant and related assets at the time the debtor's petition was filed, and it attached to the sale proceeds thereafter. However, the City's lien does not encumber funds that the trustee has realized from the debtor's intangible personal property – the settlement proceeds and insurance refunds. Because the City's lien does not reach these assets, it is unnecessary for this court to address the trustee's alternative lien perfection arguments here.

One additional issue must be addressed which neither party has raised. The trustee proposes allowing the balance of the City's claim as a general unsecured claim. However, according to the City's notice of tax lien, $451,116.00 of its claim represents the principal amount of sales taxes owed by the debtor at the time the petition was filed. Federal

---

[19] AS 01.10.060(9).

[20] AS 29.71.800(16).

[21] To reach these assets, it appears that the City would have to reduce its tax claim to judgment and thereafter follow the remedies available to a judgment lien creditor. *See Fairbanks North Star Borough*, 608 P.2d at 34 n.5.

law determines whether a tax debt is a priority claim under 11 U.S.C. § 507(a)(8).[22] The categories of taxes found in § 507(a)(8) are not mutually exclusive, and to determine whether a tax falls within the scope of one of those categories the court must look at "the specific characteristics of the tax at issue" and make a "case-by-case" evaluation.[23]

Sales taxes, if they are required to be collected by the debtor from a third party, are trust fund taxes entitled to priority under 11 U.S.C. § 507(a)(8)(C).[24] For a sales tax claim to achieve priority status under § 507(a)(8)(C), five elements must be present:

> (i) the claim is held by a governmental unit, (ii) the claim is for a tax, (iii) the tax is owed by a party other than the debtor, (iv) the tax must be collected or withheld from that party and transmitted to the governmental unit, and (v) the debtor must be liable for payment of the tax in some capacity.[25]

Further, unlike other priority tax claims, there is no time limit applicable to trust fund taxes, and a "claim for trust fund taxes will be eligible for priority no matter what the age of the tax claim."[26]

---

[22] *Ilko v. Calif. St. Bd. of Equalization (In re Ilko)*, 651 F.3d 1049, 1055 (9th Cir. 2011).

[23] *Id.* at 1056.

[24] *Id.* at 1056-57; *Shank v. Washington (In re Shank)*, 792 F.2d 829, 831-32 (9th Cir. 1986); *see also* 4 *Collier on Bankruptcy* ¶ 507.11[4] (Alan N. Resnick & Henry J. Sommer, eds., 16th ed.) (citing *Shank*).

[25] 4 *Collier on Bankruptcy* ¶ 507.11[4].

[26] *Id.*

8

The City's sales taxes contain all five elements of a § 507(a)(8)(C) trust fund tax. The City is a governmental unit and its claim is for the 3% tax imposed on sales within its limits. According to City ordinances, the burden is on the buyer to pay the tax, but the tax is to be collected by the seller and then remitted by the seller to the City at the same time the monthly sales tax returns are filed.[27] The Ninth Circuit finds these last three factors critical to the determination of whether the City's sales tax is a trust fund tax under § 507(a)(8)(C).[28] There is nothing that distinguishes the sales tax liability here from that found in *Shank*. Accordingly, the unsecured portion of the City's claim attributable to unpaid sales taxes is a priority tax claim under § 507(a)(8)(C). The balance of the City's unsecured claim, representing penalties and interest, is a general unsecured claim.[29]

In light of the foregoing, Claim No. 114 will be allowed as a secured claim in the amount of $62,319.77, a § 507(a)(8)(C) priority tax claim in the sum of $388,796.23,[30] and a general unsecured claim for $333,045.73.

An order will be entered consistent with this memorandum.

---

[27] ADAK, AK., ORDINANCE 4.06.05(B), 4:06.30, 4.06.35.

[28] *Shank*, 792 F.2d at 832.

[29] The penalty portion of the City's claim is not "in compensation for actual pecuniary loss," and therefore is not a priority claim under 11 U.S.C. § 507(a)(8)(G).

[30] The priority portion of the claim was calculated by subtracting the secured claim amount from $451,116.00, which is the principal amount of sales tax owing according to the Notice of Claim of City Tax Lien, attached to Claim No. 114-1. The general unsecured portion of the City's claim represents accrued interest and penalties.

DATED:  January 10, 2012.

                                      BY THE COURT

                                      /s/ Donald MacDonald IV
                                      DONALD MacDONALD IV
                                        United States Bankruptcy Judge

Serve:       E. LeRoy, Esq.
               B. Chandler, Esq.
               K. Battley, Trustee
               U. S. Trustee

               1/10/12